UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROY'S TRAVEL BUREAU, INC., | ) | CASE NO. 5:25-cv-1427 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| INSPIRE TRAVEL GROUP, LLC, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiff Roy's Travel Bureau, Inc. ("Roy's") brings this action against defendant Inspire Travel Group, LLC ("Inspire") challenging the alleged "illegal and intentional acts of non-party Beverly Hartong [("Hartong")], and Inspire, and others." (Doc. No. 1-2 (Complaint) ¶ 1.) Now before the Court is the motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), filed by Inspire. (Doc. No. 3 (Motion).) Roy's filed a response. (Doc. No. 6 (Opposition).) For the reasons set forth herein, Inspire's motion is GRANTED. Additionally, Roy's request for leave to amend its complaint is DENIED WITHOUT PREJUDICE.

**I.  BACKGROUND**

The complaint is far from a model of clarity. Nonetheless, the few factual allegations contained in the pleading are taken in the light most favorable to Roy's. Hartong "previously did work for and on behalf of Roy's and Roy's customers." (Doc. No. 1-2 ¶ 3.) While performing this work, Hartong was "granted access to certain files, records, computers, and materials of Roy's" and its customers. (*Id.* ¶ 4.) She was also granted access to Roy's email system and assigned an

email address by Roy's. (*Id.*)

"[S]ometime in early 2023 (and possibl[y] earlier)," without notice to or permission from Roy's, "Hartong started contacting" Roy's vendors by utilizing Roy's email system and her assigned email address. (*Id.* ¶ 5.) She directed these vendors to "transfer certain vacation reservations to Inspire[.]" (*Id.*) She also requested of these vendors that any monies owed to Roy's be re-directed to Inspire. (*Id.*) It is further alleged that "Inspire had, apparently, offered Hartong a more advantageous financial package." (*Id.* ¶ 6.)

On June 3, 2025, Roy's brought suit against Inspire in the Portage County Court of Common Pleas. (*See* Doc. No. 1-2, at 1.[1]) The complaint raises state law claims against Inspire for conversion (Count 1); violations of the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1336.61, *et seq.* (Count 2); common law theft and misappropriation of trade secrets (Count 3); tortious interference with business relations (Count 4); and an accounting (Count 5). (*See generally id.*) Prior to filing suit against Inspire, Roy's settled with Hartong. (*Id.* ¶ 14.)

On July 8, 2025, Inspire removed the action to federal court on the basis of diversity jurisdiction. (*See* Doc. No. 1 (Notice of Removal), at 1.) It filed the present motion to dismiss shortly after removal.

## II. STANDARD OF REVIEW

In the context of a motion to dismiss under Rule 12(b)(6), the sufficiency of the complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is

---

[1] All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

2

entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a plaintiff to allege sufficient facts that give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests[.]" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quotation marks and citation omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2) (second alteration in original)). In such a case, the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (stating that this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678

(citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (citations and internal quotation marks omitted) (emphasis in original), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

### III. DISCUSSION

Inspire seeks dismissal of the complaint in its entirety. Inspire posits that each claim is deficiently pleaded and, therefore, fails to state a claim for relief. (Doc. No. 3, at 1.) Additionally, Inspire argues that Count 5, which seeks an accounting, is not recognized as a standalone claim under Ohio law. (*Id.*) The Court addresses each claim in turn.

#### A. Conversion (Count 1)

In Count 1, Roy's seeks to assert a conversion claim against Inspire. (Doc. No. 1-2 ¶¶ 1–19.) In Ohio, conversion is defined as the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *See Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454, 456 (Ohio 1976) (citation omitted), *rev'd on other grounds by* 433 U.S. 562, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977). "[T]he essential elements of conversion are: (1) plaintiff's ownership or right to possess the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property; and (3) damages." *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 768 (S.D. Ohio 2013) (quoting *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 761 (S.D. Ohio 2013) (alteration in original)).

In its motion to dismiss, Inspire argues there are no factual allegations to support the second element: conversion by Inspire through a wrongful act. (Doc. No. 3, at 5–6.) While it concedes that the complaint alleges that Hartong directed third-party vendors to transfer pending vacation reservations to Inspire, it insists that the pleading fails to allege any wrongdoing on behalf of Inspire. It further notes that the complaint "omits (perhaps intentionally so) allegations that Hartong was its employee" at the time of the alleged conversion or at any time thereafter. (*Id*. at 5.)

Roy's disagrees that the conversion claim is insufficiently pleaded. With respect to the second element, it directs the Court to paragraphs 8, 17–18, and 29[2] of the complaint (*see* Doc. No. 6, at 6), which provide:

> Inspire had no legal right to direct Hartong to transfer those reservations to Inspire [¶ 8;]
>
> Hartong lacked permission to give any of Roy's property and business opportunities to Inspire [¶ 17;]
>
> Hartong (and Inspire and Express[3]) acted with actual malice, knowingly and intentionally converting said property and business opportunities to their own uses [¶ 18; and]
>
> Inspire knew (or should have known) that it was not permitted to encourage Hartong to convert Roy's property and business opportunities [¶ 29].

(Doc. No. 1-2.)

The Court agrees with Inspire that the complaint fails to set forth factual allegations that,

---

[2] While the Court, in an abundance of caution, considers all of the allegations highlighted by Roy's, it is worth noting that ¶ 29 only appears in Count 2 and is not pleaded in support of the conversion claim in Count 1.

[3] There are several complaint allegations directed to an entity identified only as "Express." (*See, e.g., id*. ¶¶ 9, 18, 30.) Roy's and Inspire are the only parties to this lawsuit. (*See id*. ¶ 1.) The complaint does not identify Express as a party or otherwise bring any claims against Express.

if believed, would satisfy the second element. Inspire's purported knowledge that it should not and legally could not direct or encourage Hartong to convert Roy's property falls short of alleging that Inspire *did* direct or encourage Hartong to do so. (*See* Doc. No. 1-2 ¶ 29.) And while the complaint alleges that Hartong lacked permission to give the property to Inspire (*see id*. ¶ 17), the complaint is devoid of facts demonstrating that Inspire knew that the property had been wrongfully procured by Hartong. Even the conclusory allegation that Inspire knowingly and intentionally converted Roy's property with actual malice fails to set forth a factual basis for a conversion claim against Inspire. It is simply not enough to take the factual allegations of wrongdoing on the part of Hartong and speculate that they must have been taken with Inspire's knowledge or at its direction. *See, e.g., Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-993, 2011 WL 2118072, at *16 (S.D. Ohio May 27, 2011) (dismissing conversion claim where "[p]laintiffs merely speculate that the Law Firm Defendants were somehow involved in the alleged frauds committed against [plaintiffs]").

Count 1 must be dismissed.

### B.  Violation of OUTSA (Count 2) and Common Law Theft (Count 3)

For purposes of the OUTSA claim in Count 2 (Doc. No. 1-2 ¶¶ 20–35), Roy's relies on the same unlawful access and redirection of its vendors' vacation reservations by Hartong. (*See id*. ¶ 26 ("As set forth above, while still doing business on behalf of Roy['s], Hartong accessed—without permission from Roy's—certain files, records, computers, and materials of" Roy's and its customers and vendors.)) It further alleges that "[s]ome of the property accessed and taken by Hartong constitute[] trade secrets as that term is defined" by OUTSA. (*Id*. ¶ 31.) Roy's seeks compensatory damages under the OUTSA (*id*. ¶¶ 32, 34), as well as punitive damages (*id*. ¶¶ 33, 35) and attorney's fees. (*Id*. ¶ 34.)

To establish liability for trade secret misappropriation under the OUTSA, Ohio Rev. Code § 1333.61, a plaintiff must show: (1) the existence of a trade secret, (2) the acquisition of that trade secret through a confidential relationship or through improper means, and (3) the unauthorized use of that trade secret. *Novus Grp., LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 427–28 (6th Cir. 2023) (citing *Tomaydo-Tomahhdo, LLC v. Vozary*, 82 N.E.3d 1180, 1184 (Ohio Ct. App. 2017) (further citation omitted)); *Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, 569 F. Supp. 3d 702, 712 (N.D. Ohio 2021) (similar). Inspire challenges the sufficiency of Roy's pleading as to the second and third elements. (Doc. No. 3, at 6–7.)[4]

Inspire argues that the complaint allegations fail to establish the existence of a confidential relationship between it and Roy's. (Doc. No. 3, at 7.) Inspire's reading of the OUTSA is too narrow. "[T]he language of the statute makes it clear that misappropriation includes a third party who, at the time of the disclosure or use, is aware that the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Safety Today, Inc. v. Roy*, No. 2:12-cv-510, 2013 WL 12286398, at *2 (S.D. Ohio Aug. 16, 2013) (citing Ohio Rev. Code § 1333.61(B)(2)(b)). The statute also covers the situation where a third party obtains a trade secret knowing that another previously acquired it by improper means. *See Keller N. Am., Inc. v. Earl*, No. 1:20-cv-2401, 2021 WL 3737915, at *9 (N.D. Ohio Aug. 24, 2021) (noting that "Ohio law punishes more than the initial download or misuse of the trade secret . . . offenders may be liable if they knew the information was acquired by improper means and yet they used that information or used that information without the owner's consent" (citing Ohio Rev. Code §

---

[4] Inspire does not take issue with the sufficiency of the pleadings as to the first element—the existence of a trade secret—and the Court makes no determination as to whether the complaint has sufficiently alleged that these lost business opportunities constitute trade secrets under the OUTSA.

7

1333.61(B)(1)). Accordingly, it is not necessary that a plaintiff and defendant enjoy a confidential relationship so long as one of two circumstances was present: (1) the trade secret was received by the defendant with the knowledge that it was acquired by another via improper means (*see* Ohio Rev. Code § 1333.61(B)(1)); or (2) the trade secret was disclosed or used by defendant without the consent of the owner under circumstances where the disclosing individual used improper means to acquire it, knew it was derived under circumstances giving rise to a duty to maintain secrecy, or had knowledge that the trade secret was acquired by accident or mistake. *See* Ohio Rev. Code § 1333.61(B)(2).

Here, the complaint allegations can be read collectively to assert that Hartong, who had previously been granted access to Roy's trade secrets by virtue of her work with Roy's, acquired these trade secrets both by improper means and without Roy's consent under circumstances giving rise to a duty to maintain secrecy. (*See* Doc. No. 1-2 ¶¶ 3–4, 26–28, 31.) While these allegations may be sufficient to support a misappropriation claim against *Hartong*, they fall short of pleading an OUSTA claim against *Inspire*. Specifically, there are no factual allegations that, if believed, would establish that Inspire knew Hartong had acquired the alleged trade secrets either by improper means or without Roy's consent under the circumstances enumerated above. Again, an allegation that Inspire knew that it was not permitted to encourage Hartong to appropriate Roy's trade secrets (*see id.* ¶ 29) does not support an inference that it knowingly did so.

Indeed, there are no factual allegations that would support a determination that Inspire even knew that the reservations belonged to Roy's. Allegations that Hartong directed Roy's vendors to redirect business opportunities and monies to Inspire (Doc. No. 1-2 ¶¶ 5, 26), coupled with the averment that Inspire offered Hartong a more advantageous financial package (*see id.* ¶ 6), perhaps

8

moves the needle closer to a plausible claim. Together these allegations hint at the possibility that Inspire poached Hartong from Roy's with the understanding that Hartong would bring her former employer's trade secrets with her to work for Inspire. *See, e.g., Safety Today, Inc.*, 2013 WL 12286398, at *2 (finding complaint plausibly alleged that plaintiff's former employees were working on behalf of defendant when they used or disclosed their former employer's trade secrets).

Yet, *possibility* is not the same as *plausibility*. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." (quotation marks and citation omitted)). As Inspire correctly observes, Roy's has not alleged that Hartong was working for Inspire—or had an agreement to work for it in the future—at the time she allegedly accessed or acquired Roy's trade secrets. In fact, the complaint does not allege that Hartong ever worked for Inspire.[5] "Dismissal is appropriate where a plaintiff fails to articulate a theory of trade misrepresentation and makes only naked assertions devoid of factual enhancement." *Corp. Bertec v. Sparta Software Corp.*, No. 2:19-cv-4623, 2020 WL 2112162, at *8 (S.D. Ohio May 4, 2020) (quotation marks and citation omitted). Because Roy's has not alleged a theory that Inspire unlawfully misappropriated its trade secrets—supported by factual enhancement—it has failed to "nudge[]" its misappropriation claim "across the line from conceivable to plausible," and the claim must be dismissed. *See Twombly*, 550 U.S. at 570.

---

[5] Of course, subsequent employment with Inspire, alone, would be insufficient to successfully allege that Inspire misappropriated Roy's trade secrets. *See also A&P, Tech., Inc. v. Lariviere*, No. 1:17-cv-534, 2017 WL 6606961, at *10 (S.D. Ohio Dec. 27, 2017) ("The Sixth Circuit Court of Appeals has explained that plaintiffs pursuing a threatened misappropriation theory . . . fail to state a 'cognizable' claim when they merely rely on 'generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets.'" (quoting *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 535 (6th Cir. 2008)); *Prof. Investigating & Consulting Agency, Inc. v. SOS Security, LLC*, No. 23-3344, 2024 WL 2106223, at *4 (6th Cir. May 10, 2024) ("By itself . . . the mere fact that one company hired another's employees can't carry a misappropriation claim to trial.").

Inspire argues that Roy's common law claim for "theft and misappropriation" in Count 3 (*see* Doc. No. 1-2 ¶¶ 36–39) fails for many of the same reasons that the OUSTA claim fails. (Doc. No. 3, at 6–7.) The Court agrees. Common law theft, like conversion, is an intentional tort. *Yeager v. U.S. Bank*, No. C-200262, 2021 WL 2394566, at *4 (Ohio Ct. App. June 11, 2021) (quotation marks and citation omitted). "Unsupported *conclusions* that [a defendant] committed an intentional tort are not taken as admitted by a motion to dismiss and are not sufficient to withstand such a motion." *Id*. (quotation marks and citations omitted) (emphasis in original); *see Sharp v. Ingham Cnty.*, 23 F. App'x 496, 498 (6th Cir. 2001) (On a motion to dismiss "[t]he court is not . . . bound to accept as true unwarranted factual inferences or legal conclusion unsupported by well-pleaded facts." (citations omitted)). Without any factual allegations of wrongdoing on the part of Inspire, the common law claim in Count 3 is also subject to dismissal. Additionally, because the theft claim in Count 3, like and the other tort actions in the complaint rely on the same alleged misconduct by Hartong, it is likely that they are preempted by the OUTSA. *See Safety Today, Inc.*, 2013 WL 12286398, at *3 ("The Ohio Uniform Trade Secrets Act displaces conflicting tort, restitutionary, and other laws providing civil remedies for misappropriation of a trade secret." (citing Ohio Rev. Code § 1331.67)).

### C. Tortious Interference (Count 4)

In Count 4, Roy's brings a claim against Inspire for tortious interference with business relationships. (Doc. No. 1-2 ¶¶ 40–46.) Under Ohio law, "'[t]he tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another.'" *Harris v. Bornhorst*, 513 F.3d 503, 523 (6th Cir. 2008) (quoting *McConnell v. Hunt Sports Enters*., 725

N.E.2d 1193, 1216 (Ohio Ct. App. 1999) (alteration in original)). "'[T]o establish a claim for tortious interference with a business relationship, a party must show: (1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages.'" *Pasqualetti v. Kia Motors Am., Inc.*, 663 F. Supp. 2d 586, 602 (S.D. Ohio 2009) (quoting *Bowshier v. Chrysler Fin. Corp.*, 144 F. Supp. 2d 919, 926 (S.D. Ohio 2001) (further citation omitted)); *see BCG Masonic Cleveland, LLC v. Live Nation Entm't Inc.*, 570 F. Supp. 3d 552, 557 (N.D. Ohio 2021) (similar) (citation omitted).

The allegations supporting this claim are sparse. Relying on the same 2023 activity of Hartong that forms the basis for the other claims (*see* Doc. No. 1-2 ¶¶ 5, 40), Roy's alleges that "Hartong had access to the identity of Roy's customers" (*see id.* ¶ 41), "Hartong knew of said relationships between Roy's and its customers" (*see id.* ¶ 42), and "Inspire knowingly and intentionally interfered with the business relationships between Roy's and its customers." (*Id.* ¶ 43.) Inspire argues that these allegations fail to establish most of the elements of a tortious interference claim. Specifically, it notes that the complaint fails to allege that Inspire knew that Roy's had an ongoing business relationship with the unidentified customers, and further maintains that the complaint is "devoid of any allegation that its former customers *breached* a contract with it—if the customers were free to book travel with whomever they choose, there could be no intentional interference." (Doc. No. 3, at 8 (emphasis in original).)

Of course, the complaint purports to raise a claim for tortious interference with a business relationship and not tortious interference with a contract. Accordingly, it is not necessary that a

11

defendant breach a formed contract to be found liable. *See Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012) ("The elements of a claim for tortious interference with business relationships are almost identical [to a claim for tortious interference with a contract], the main distinction being 'that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.'" (quoting *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780–81 (2002)).

Nevertheless, the complaint fails to raise a claim for tortious interference with a business relationship because it fails to identify any specific business relationships to which Inspire interfered. "'A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim.'" *BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, 570 F. Supp. 3d 552, 559 (N.D. Ohio 2021) (quoting *Barrio Bros., LLC v. Revolucion, LLC*, No. 18-cv-2052, 2020 WL 3547014, at *7 (N.D. Ohio June 30, 2020) (further citation omitted)). At best, the complaint alleges that Hartong interfered with unknown business opportunities with unidentified customers. Further, beyond these vague assertions against Hartong, the complaint fails to allege how Inspire interfered with any of these relationships, or allege a theory under which Hartong's actions could be attributed to Inspire. *See Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 933 F. Supp. 2d 974, 1017 (S.D. Ohio 2013) (noting that interference with a business relationship, alone, is not sufficient; "[i]t is the improper nature of the conduct that establishes liability" (quoting *Gracetech Tech. Inc v. Perez*, No. 96913, 2012 WL 589473, at *6 (Ohio Ct. App. Feb. 23, 2012)).

Additionally, the complaint does not advance factual allegations demonstrating that Inspire

had any knowledge of the alleged business relationships. "'The knowledge required is actual knowledge; constructive knowledge is not sufficient'" to sustain a cause of action for tortious interference with business relationships. *Becker v. Cardinal Health, Inc.*, 179 N.E.3d 769, 779 (Ohio Ct. App. 2021) (quoting *Gentile v. Turkoly*, 86 N.E.3d 991, 999 (Ohio Ct. App. 2017) (further citation omitted))). Here, the complaint does not allege that Inspire knew of the relationship between Roy's and the unidentified customers, nor does it offer any insight into how Inspire knew. Rather, Roy's simply avers that Hartong knew of the relationships between Roy's and its customers (*see* Doc. No. 1-2 ¶ 42), and then offers the empty conclusion that Inspire "knowingly and intentionally interfered with" those relationships. (*See id*. ¶ 43.) Allegations of wrongdoing on the part of Hartong—without something to connect Inspire to the wrongdoing—cannot support a claim of tortious interference with business relationships against Inspire.

Roy's has failed to state a claim against Inspire for tortious interference with business relationships, and Count 4, therefore, must be dismissed.

### D. Accounting (Count 5)

The complaint also appears to allege a claim for an "accounting." In Count 5, Roy's requests "an accounting of all monies, accounts, reservations, and business opportunities misdirected from Roy's to Inspire." (*See* Doc. No. 1-2 ¶ 48.) It also requests that the Court "disgorge Inspire from any and all monies that were improperly misdirected to Inspire[.]" (*See id*. ¶ 51.)

Inspire argues that such a claim is not recognized under Ohio law. (Doc. No. 3, at 8 (citing *Moore Family Tr. v. Jeffers*, 225 N.E.3d 548, 559 (Ohio Ct. App. 2023) (noting that under Ohio law, "a demand for an accounting does not form the basis for a standalone action but is instead, a

remedy")).) While Roy's concedes that Ohio law does not provide for an accounting as a separate cause of action (Doc. No. 6, at 11), it insists that it "has stated such [a request for an accounting] as a separate cause of action and as a remedy." (*Id.*).

It is well settled that a request for an accounting cannot serve as a standalone claim under Ohio law. *See Moore Family Tr.*, 225 N.E.3d at 559 ("Accounting and punitive damages are remedies, and not causes of action." (quoting *Meehan v. Mardis*, 146 N.E.3d 1266, 1270 (Ohio Ct. App. 2018)). To the extent Roy's has attempted to advance such a claim, it must be dismissed. It is equally well settled, under Ohio law, that a request for an "accounting is only available as an equitable remedy in the absence of an adequate remedy at law." *E. Div. Mark Termini Assocs. Inc. v. Klutch Sports Grp., LLC*, No. 1:24-cv-1068, 2024 WL 4679350, at *7 (N.D. Ohio Nov. 5, 2024) (citing *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972)); *see also Skurka Aerospace, Inc. v. Eaton Aerospace, L.L.C.*, No. 1:08-cv-1565, 2011 WL 1134591, at *4 (N.D. Ohio Mar. 25, 2011) (noting that actions for accounting are "rare," given the liberal standards for discovery in federal court (quotation marks and citations omitted)). Roy's has not alleged the absence of an adequate remedy at law, and its complaint seeks damages available under the law. Consequently, it cannot maintain any request for an accounting, even as a remedy.

### E. Motion to Amend

Because Roy's has failed to plead sufficient factual content to support any of the asserted claims, the entire complaint is subject to dismissal In its opposition brief, however, Roy's states that if the Court disagrees that it has pleaded viable causes of action, it "requests that this Court permit [it] to prepare and file an amended complaint." (Doc. No. 6, at 3.) Roy's does not attach a proposed amended complaint to the opposition, nor does it elaborate on the expected content of

14

any proposed amendment. Roy's bare request to amend is DENIED.

In *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2018), the Sixth Circuit affirmed this Court's denial of a similar bare request to amend to cure pleading deficiencies. In so ruling, the court explained:

> "The problem with the lack of a motion or proposed amendment . . . is that '[w]ithout viewing the proposed amendment, it [is] impossible for the district court to determine whether leave to amend should have been granted.'" *Islamic Ctr.* [*of Nashville v. Tennessee*], 872 F.3d [377,] 387 n. 7 (alterations in original) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003)); *see also Beydoun v. Sessions*, 871 F.3d 459, 470 (6th Cir. 2017) ("[I]mplicit in [Rule 15(a)] is that the district court must be able to determine whether justice so requires, and in order to do this, the court must have before it the substance of the proposed amendment." (second alteration in original) (quoting *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002))).

*Id*. In the present case, Roy's has not even hinted as to how an amended complaint could potentially cure the pleading deficiencies identified in Inspire's Rule 12(b)(6) motion, nor has it suggested that it has any additional factual allegations at its disposal that could breathe life into the naked assertions and bald conclusions that it has put forward in its complaint. *Cf. Hogan v. Jacobson*, 823 F.3d 872, 885 n.3 (6th Cir. 2016) (noting that a plaintiff can "otherwise provide[] an explanation of what additional factual content might be pleaded in an amended complaint" (citations omitted)). Under these circumstances, the Court cannot find that "justice so requires" that the Court extend to Roy's leave to amend. *See* Fed. R. Civ. P. 15(a).

That said, the Court recognizes that Roy's has alleged the broad contours of certain claims and could remedy the identified deficiencies by properly pleading additional factual content. *See Novus Grp., LLC v. Prudential Fin., Inc.*, No. 2:19-cv-208, 2019 WL 4452708, at *8 (S.D. Ohio Sept. 17, 2019) (noting that, in the Sixth Circuit, "pleading on information and belief is allowed 'where the facts are peculiarly within the possession and control of the defendant, or where the

belief is based on factual information that makes the inference of culpability plausible.'" (quoting *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447–48 (6th Cir. 2014)). Given that Roy's may be able to demonstrate an ability to plead factually sufficient claims, the Court is reluctant to dismiss this action with prejudice at this early stage in the litigation. *See also Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (holding that a district court abuses its discretion when dismissing a complaint with prejudice that can clearly "be saved by amendment" (quotation marks and citation omitted)).

Accordingly, the Court will give Roy's an opportunity, if it believes it has sufficient facts, to file a proper motion pursuant to the Federal Rules of Civil Procedure for leave to amend by no later than October 24, 2025. A proposed amended complaint must be attached to the motion to amend. Further, the motion should explain how the proposed amendment corrects the pleading deficiencies identified in the motion to dismiss and this Court's Memorandum Opinion.

## IV. CONCLUSION

For the foregoing reasons, Inspire's motion to dismiss (Doc. No. 3) is GRANTED. Roy's request for leave to amend its complaint is DENIED WITHOUT PREJUDICE. If Roy's believes it has sufficient facts to file an amended complaint, it is GRANTED LEAVE until October 24, 2025, to file a motion to amend that fully complies with Fed. R. Civ. P. 15 and governing Sixth Circuit law.

**IT IS SO ORDERED**.

Dated: October 10, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**